UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
PETER McCLUSKEY,

                           Plaintiff,

           - against -

SAMUEL D. ROBERTS, New York State Commissioner
of the Office of Temporary and Disability Assistance, acting
in his individual capacity, and DARLA P. OTO, Principal
Hearing Officer of the Office of Temporary and Disability
Assistance, acting in her individual capacity,

                           Defendants.
--------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
19-CV-2386 (RRM) (ARL)

ROSLYNN R. MAUSKOPF, Chief United States District Judge.

      This is at least the second civil rights action brought by *pro se* plaintiff Peter McCluskey against Samuel Roberts, the Commissioner of the New York State Office of Temporary and Disability Assistance ("OTDA"), and Darla P. Oto, the Principal Hearing Officer at OTDA, in which McCluskey complains about their actions in affirming a 2017 decision by the Nassau County Department of Social Services ("Nassau DSS") that refused to take into consideration McCluskey's unincurred dental expenses in calculating his income and his SNAP benefits (formerly known as food stamps).  In a Memorandum and Order dated May 18, 2020, the Court granted Defendants' motion to dismiss this action, holding 1) that this action was barred by res judicata, 2) that the complaint failed to allege personal involvement on the part of Roberts or a violation of McCluskey's federal constitutional or statutory rights, and 3) that Oto enjoyed absolute judicial immunity.  McCluskey now moves to alter or amend the judgment against him pursuant to Rule 59(e) of the Federal Rules of Civil Procedure on several grounds.  For the reasons set forth below, that motion is denied.

**BACKGROUND**

Although this Memorandum and Order assumes familiarity with this action and with the

two prior actions which McCluskey has brought with respect to the calculation of his SNAP

benefits, the Court will recap McCluskey's litigation history for the reader's convenience.

McCluskey is an elderly resident of Nassau County, who has been receiving food stamps since

2005. Defendant Roberts is the Commissioner of the Office of Temporary and Disability

Assistance ("OTDA"), the state agency charged with overseeing the administration of SNAP

benefits. Defendant Oto is a Public Hearing Officer at OTDA in Albany. Nassau DSS is the

agency responsible for determining SNAP benefit eligibility in Nassau County and Jeanne Ryan

is charged with overseeing the administration of SNAP benefits at Nassau DSS. McCluskey's

SNAP benefits are reassessed or re-certified every odd-numbered year.

Since 2012, McCluskey has been litigating the issue of whether anticipated medical and

dental expenses which have yet to be incurred should be considered in calculating his income for

benefits purposes. In 2012, before Roberts became Commissioner of OTDA, McCluskey

commenced an action – *McCluskey v. Commissioner of Nassau County Department of Social

Services*, No. 12-CV-3852 (JFB) (ETB) – against Ryan and the Commissioners of DSS and

OTDA. In September 2013, Judge Bianco dismissed that action, holding, among other things,

that McCluskey's claims against the OTDA Commissioner in his official capacity were barred

by the Eleventh Amendment and that the claim against the OTDA Commissioner in his personal

capacity failed because the complaint did not allege facts suggesting that the Commissioner was

personally involved in the actions identified in support of McCluskey's §1983 claim. *See

McCluskey v. Comm'r of Nassau Cty. Dep't of Soc. Servs.*, No. 12-CV-3852 (JFB) (ETB), 2013

WL 4780954, at *3 (E.D.N.Y. Sept. 5, 2013).

2

In 2017, McCluskey commenced a second federal action:  *McCluskey v. Imhof*, No. 17-CV-5873 (JFB) (ARL) (the "2017 Action").  That action named four defendants, including Roberts in his official capacity as Commissioner of OTDA and Oto in her official capacity as Principal Hearing Officer.  That action principally contested the rejection of McCluskey's application for an increase in his SNAP benefits based on anticipated medical and dental expenses.  Among the documents McCluskey submitted in support of that application were medical bills from his cardiologist and a sworn statement from his dentist, Dr. Berger, attesting to McCluskey's anticipated dental expenses.  The actual medical expenses documented in the cardiologist's bill were accepted by Nassau DSS and reflected in their calculation of McCluskey's SNAP benefits.  (*Id.*)  However, Nassau DSS refused to consider the anticipated dental expenses, asserting that anticipated expenses are never included in calculating the SNAP medical deduction.  (*Id.*)

McCluskey appealed this ruling, requesting a Fair Hearing before the OTDA.  On August 4, 2017, he received a Fair Hearing Decision which affirmed Nassau DSS's ruling.  That decision read, in pertinent part:

> Office Regulations at 18 NYCRR 387.12(c) advise that for SNAP budgeting purposes, deductions from income include that portion of allowable medical expenses … which are in excess of $35 per month <u>and incurred</u>.  In this case, the undisputed record demonstrates that the Appellant has not yet incurred the anticipated dental expenses.  Therefore, the Agencies [*sic*] determination as to the amount of the deductible medical expenses … is affirmed.

(Compl. at ¶ 8 (emphasis in original)).

In a letter dated August 8, 2017, McCluskey requested that the OTDA Office of Administrative Hearings ("OAH") review the Fair Hearing Decision pursuant to 18 NYCRR § 358-6.6(a).  (Compl. at ¶ 11.)  In that letter, McCluskey argued that the Fair Hearing Decision

was contrary to a provision in 7 C.F.R. § 273.10(d)(4), which requires, among other things, that a State agency "calculate a household's expenses based on the expenses the household expects to be billed for during the certification period."  McCluskey argued that 18 NYCRR § 387.12(c), which permits deductions "consisting of that portion of medical expenses, excluding special diets, which are in excess of $35 per month and incurred by a household member who meets the definition of elderly (age 60 and older) or disabled," is inconsistent with the federal regulation and the law on which the regulation is based: 7 U.S.C. § 2014(e)(5)(B).

In a letter dated September 11, 2017, Principal Hearing Officer Oto rejected McCluskey's request for OAH review, stating that OAH "found no basis to establish that the Decision is incorrect."  (*Id.* at ¶¶ 13–14.)  She did not address McCluskey's arguments but maintained that the anticipated expenses could not be considered because they were "just estimates."  (*Id.*)

On September 15, 2017, McCluskey sent a letter to OTDA Commissioner Roberts, arguing that the Fair Hearing Decision and 18 NYCRR § 387.12 were both contrary to 7 U.S.C. § 2014(e)(5)(B).  (Compl. at ¶ 19.)  In his letter, McCluskey cited to *McCluskey v. Nassau Cty. Comm'r of Soc. Servs.*, 12-CV-3852 (JFB) (ETB), as evidence that DSS had been engaged in this same "illegal practice" since 2012 and argued that OTDA had perpetuated the illegality by affirming DSS decision based on 18 NYCRR § 387.12.

In early October 2017, having received no response to his letter, McCluskey commenced the 2017 Action against John Imhof, who was then Commissioner of Nassau DSS; Ryan; Roberts; and Oto.  After McCluskey amended his complaint, Roberts and Oto moved to dismiss the action and that motion was referred to Magistrate Judge Lindsay.  On August 27, 2018, Judge Lindsay issued a report and recommendation ("R&R"), which noted:  "The arguments set forth in the 2012 lawsuit essentially mirror the allegations in the current Amended Complaint."

4

*McCluskey v. Imhof*, No. 17-CV-5873 (JFB) (ARL), 2018 WL 5077169, at *3 (E.D.N.Y. Aug. 27, 2018).  The R&R did not rely on res judicata but recommended dismissing the claims against Roberts on Eleventh Amendment grounds.  *Id.* at *4–*5.  Magistrate Judge Lindsay recommended dismissing the action against Oto for failure to state a § 1983 cause of action, noting, "the conduct attributable to Oto does not establish that she deprived him of a federal right." *Id.* at *6.  Although McCluskey objected to the R&R, Judge Bianco adopted the R&R in its entirety and directed the entry of judgment against McCluskey.  *McCluskey v. Imhof*, No. 17-CV-5873 (JFB) (ARL), 2018 WL 4521207 (E.D.N.Y. Sept. 21, 2018).

In October 2018, McCluskey moved to alter or amend that judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and to file a supplemental pleading pursuant Rule 15(d).  The latter motion sought to add allegations relating to Nassau DSS's failure to take anticipated medical expenses into account during the 2019 recertification process.  In particular, McCluskey proposed allegations faulting the DSS's recertification form (the LDSS-4826) for requiring medical bills and failing to allow applicant's to claim anticipated medical expenses.  (Proposed Supplementary Addition to Amended Complaint (Doc. No. 62-l in No. 17-CV-5873) at 20.)[1]  Since McCluskey's Rule 59(e) motion was denied, *McCluskey v. Imhof*, No. 17-CV-5873 (RRM) (ARL), 2019 WL 4861372, at *1 (E.D.N.Y. Sept. 30, 2019), the Court did not address the motion to file a supplementary complaint.

This Action

In April 2019, a few months before McCluskey's Rule 59(e) motion was denied, McCluskey filed this § 1983 action against Roberts and Oto.  Although the caption of the complaint alleged that these defendant were being sued in their individual capacities, the ad

---

[1] Page numbers refer to the numbers assigned by the Court's Electronic Case Filing system.

damnum clause requested an injunction directing the defendants to "provide all assistance lost to plaintiff as a result of defendants' actions" and "to ensure a proper determination of the medical expense deduction for food stamps to elderly applicants."  (Compl. (Doc. No. 1) at 9.)

The complaint in this case alleged three causes of action.  The first asserted that defendants violated the Supremacy Clause by applying 18 NYCRR § 387.12(c) to deny consideration of anticipated medical expenses, even though this state regulation was in violation of 7 U.S.C. § 2014(e)(5)(B) and 7 C.F.R. § 273.10(d)(4).  The second alleged that defendants knowingly violated 7 U.S.C. § 2014(e)(5)(B)(ii), 7 C.F.R. § 273.10(d)(4)(III), and 7 U.S.C. § 2020(e) in 2012, 2017, and 2019 by refusing to consider medical expenses until they were incurred and by mandating submission of recertification forms which did not include any provision for anticipated medical expenses.   The third cause of action alleged that defendants violated their obligations under New York Social Services Law 22 by "knowingly affirming the application of 18 NYCRR § 387.12(c)."

Defendants moved to dismiss this action, principally arguing that this action is barred by the doctrines of res judicata and/or collateral estoppel.  Defendants also argued, among other things, that McCluskey had not alleged a viable section 1983 claim against either defendant.

In a Memorandum and Order dated May 18, 2020 (the "Prior Order"), the Court granted defendants' motion to dismiss.  First, the Court held that defendants had made out the elements of a res judicata defense as set forth in *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014), because McCluskey's 2017 Action was adjudicated on the merits as to Roberts and Oto, the 2017 Action was brought by the exact same plaintiff, and the claims asserted in this action could have been raised in the 2017 Action.  (Prior Order (Doc. No. 26) at 8.)  In addressing the second element, the Court stated:

> Although McCluskey's complaint in this case alleges that "the individual capacity
> defendants in this action are not in privity with the official capacity defendants in
> the 2017 [A]ction," (Compl. at ¶ 39), the second element does not require that
> defendants establish that they were the same as, or in privity with, the defendants
> in the prior action.  Rather, it requires that the plaintiffs in both actions be the
> same.

(*Id.*)  In discussing the third element, the Court noted that although the 2017 Action named Roberts and Oto in their official capacities and the instant action purported to name them in their individual capacities, both cases involved the same transaction or series of transactions.  (*Id.* at 9.)

The Court also dismissed the personal liability claims against Roberts and Oto for other reasons.  The Court held that McCluskey's complaint did not state a § 1983 claim against Roberts because it did not allege personal involvement by the Commissioner of OTDA, much less his involvement in a violation of McCluskey's federal constitutional or statutory rights.  (*Id.* at 10–11.)  The Court held that Oto, as an OTDA hearing officer, was absolutely immune from claims for money damages.  (*Id.*)

The Instant Motion

McCluskey now moves pursuant to Rule 59(e) of the Federal Rules of Civil Procedure to alter or amend the judgment dismissing his case.  Read liberally, his 59(e) Motion to Amend Judgment and Order (the "Motion") raises five arguments.  First, McCluskey argues that res judicata does not bar his second cause of action because it relies in part on events that occurred after the 2017 Action was commenced.  (Motion (Doc. No. 28-1) at 1–2.)  Second, McCluskey implies that the Court overlooked his argument that res judicata does not apply to the instant case because Roberts and Oto were named in their individual capacities in this action but were named in their official capacities in the 2017 Action.  (*Id.* at 2.)  Third, quoting portions of the complaint and the report and recommendation in the 2017 Action and noting that the post-judgment motion

to supplement his pleading in that action was never adjudicated, McCluskey claims he has alleged federal constitutional and statutory claims in support of his § 1983 claims:  namely, a due process claim and a federal statutory claim for violating the time limits set forth in 7 U.S.C. § 2020(e)(3) and (9).  (Motion at 2–3.)  Fourth, McCluskey cites to *Briggs v. Bremby*, 792 F.3d 239 (2d Cir. 2015), for the proposition that the Second Circuit does not require a showing of personal involvement on the part of Commissioners in cases such as this.  (Motion at 3.)  Finally, citing to *Earle v. Benoit*, 850 F.2d 836 (1st Cir. 1988), and *Nesmith v. Alford*, 318 F.2d 110 (5th Cir. 1963), McCluskey argues that the Court overlooked allegations that Oto engaged in a corrupt conspiracy with attorneys representing his adversaries.  (Motion at 4 (citing Compl. ¶¶ 36–37).)

## STANDARD OF REVIEW

Rule 59(e), which allows a litigant to file a "motion to alter or amend a judgment" within 28 days of the entry of judgment, "enables a party to request that a district court reconsider a just-issued judgment."  *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020).  Although Rule 59(e) and Rule 60(b), which permits a district to "relieve a party or its legal representative from a final judgment," differ in various respects, *see Banister*, 140 S. Ct. at 1709–11, the standard for Rule 59(e) and Rule 60(b) motions is largely the same.  *Gomez v. United States*, No. 11-CV-6348 (SLT), 2016 WL 4027928, at *2 (E.D.N.Y. July 26, 2016) (citing *Maalouf v. Salomon Smith Barney, Inc.*, No. 02-CV-4770 (SAS), 2004 WL 2782876, at *1 (S.D.N.Y. Dec. 3, 2004).  In general, "[t]he standard for granting … [reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

"And 'reconsideration' means just that: Courts will not entertain arguments that could have been but were not raised before the just-issued decision." *Banister*, 140 S. Ct. at 1708.

## DISCUSSION

I.   Res Judicata

McCluskey's first two arguments for reconsideration relate to res judicata, which "encompasses two significantly different doctrines: claim preclusion and issue preclusion." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 107 (2d Cir. 2015) (citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)).   "Under the doctrine of … claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"   *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)).   "In determining whether a second suit is barred by this doctrine, the fact that the first and second suits involved the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive."   *Maharaj v. BankAmerica Corp.*, 128 F.3d 94, 97 (2d Cir.1997). "Rather, the first judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier suit …."   *Id.*

"[A]s a matter of logic, when the second action concerns a transaction occurring after the commencement of the prior litigation, claim preclusion generally does not come into play." *Legnani v. Alitalia Linee Aeree Italiane, S.p.A.*, 400 F.3d 139, 141 (2d Cir. 2005) (quoting *Maharaj*, 128 F.3d at 97).   "When a subsequent action involves a claim over 'ongoing conduct' and it relies on facts that occurred both before and after the earlier action commenced, claim preclusion will not bar a suit … 'based upon legally significant acts occurring after the filing of a prior suit that was itself based upon earlier acts.'"   *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d

493, 501 (2d Cir. 2014) (quoting *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 113 (2d Cir. 2000)).  However, "claim preclusion may apply where some of the facts on which a subsequent action is based post-date the first action but do not amount to a new claim."  *Id.* (quoting *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 384 (2d Cir. 2003)).

In his Rule 59(e) motion, McCluskey first argues that his second cause of action is a "new claim" because it relies, in part, on events that occurred in 2019, after the commencement of the 2017 Action.  The essence of that cause of action, however, is that since 2012, defendants have continued their practice of refusing to consider anticipated medical expenses and of using the same, allegedly defective recertification form which does not allow for the reporting of anticipated medical expenses.  As a result, McCluskey has been "required … to report medical expenses as they occur in the certification period in the years 2012, 2017, and 2019," and has been unable to include anticipated medical expenses in the  recertification form he filed in 2012, 2017, and 2019.  (Compl. at 8.)  That cause of action is not based on legally significant acts which occurred in 2019 but complains of a longstanding practice.  As such, it does not constitute a "new claim."

In his second argument, McCluskey claims the Court overlooked his argument that the defendants in this action differ from the defendants in the 2017 Action because he purportedly sued them in their official capacities in 2017 and is ostensibly suing them in their individual capacities now.  McClusky claims that the Prior Order "contended that *res judicata* 'does not require that defendants establish that they were the same as, or in privity with, the defendants in the prior action.'"  (Motion at 2 (emphasis added).)  This claim is inaccurate.  In addressing the second of three elements which a defendant must prove in order to establish the affirmative defense of res judicata, the Prior Order stated: "*the second element* does not require that

defendants establish that they were the same as, or in privity with, the defendants in the prior action.  Rather, it requires that the plaintiffs in both actions be the same." (Prior Order at 10 (emphasis added)).

The Court addressed the argument McCluskey claims it overlooked in its discussion of the third element of the *TechnoMarine* standard.  The Court stated:

> In this action, McCluskey sues Roberts and Oto in their individual capacities, alleging that these defendants violated the Supremacy Clause by applying provisions of 18 NYCRR § 387.12(c) and ignoring the provisions of 7 U.S.C. §§ 2014(e)(5)(B)(ii), 2014(e)(5)(B)(iii), and 2020(e).  In the 2017 Action, McCluskey sued Roberts and Oto (along with DSS Commissioner Imhof and DSS Snap Director Ryan) in their official capacities, alleging that they followed unlawful customs, policies, and practices in denying McCluskey benefits to which he was entitled.

> It is beyond dispute, however, that both this action and the 2017 Action focused on the same transaction or series of transactions:  the DSS's decision not to consider the anticipated medical expenses described in Dr. Berger's affidavit, Principal Hearing Officer Oto's affirmance of that decision, and OTDA Commissioner Roberts refusal to take any action in response to McCluskey's letter alerting him to DSS's allegedly illegal practice.  The facts alleged by McCluskey in support of the 2017 Action were, in large part, identical to the facts alleged in support of the instant action, so the same evidence would be needed to support both claims.  Finally, the facts essential to the instant action were also present in the 2017 Action.

Prior Order at 11.

Since the Court rationale for rejecting McCluskey's argument was not clear to McCluskey, the Court will clarify it.  The Amended Complaint in the 2017 Action specifically alleged that the lawsuit was against Roberts and Oto in their official capacities.  (Am. Compl. (Doc. No. 27 in No. 17-CV-5873) at ¶ 8.)  Yet, the ad damnum clause in that case sought money damages – relief which would be unavailable if defendants were sued solely in their official capacities.  Similarly, although the caption of the complaint in this action states that McCluskey is suing Roberts and Oto in their individual capacities, those defendants would have to act in

11

their official capacities to grant the injunctive relief requested in this action.  Accordingly, defendants in this case are sued, at least in part, in their official capacities.  *See* Restatement (Second) of Judgments § 36, cmt. e (1982) ("A public official sued as an individual nevertheless participates in the action in his official capacity if the remedy sought is that of compelling, restraining, or making declarations concerning performance of acts in the course of his official duties ….")

The Court is aware that several Circuits have held that a defendant sued in his official capacity is not in privity with himself in his individual capacity.  *See, e.g.*, *Andrews v. Daw*, 201 F.3d 521, 526 (4th Cir. 2000) ("[A] government official in his official capacity is not in privity with himself in his individual capacity for purposes of res judicata."); *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 188 (5th Cir. 1990) ("Res judicata does not apply when the parties appear in one action in a representative capacity and in a subsequent action in an individual capacity."); *Headley v. Bacon*, 828 F.2d 1272, 1279 (8th Cir. 1987) ("[L]itigation involving officials in their official capacity does not preclude relitigation in their personal capacity.") However, McCluskey cannot defeat res judicata through the artifice of claiming to sue defendants in their official capacity in one suit and claiming to sue them in their individual capacity in the next.  The purpose of res judicata and collateral estoppel is "to protect 'litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation.'"  *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)).  "The threshold requirement of identity of parties, qualified by the doctrine of privity, finds its roots in the ancient notion, now supplemented by the due process clause, that a person cannot be bound by a judgment without notice of a claim and an opportunity to be heard."

*Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1233 (2d Cir. 1977).  "Whether such identity is evident is a factual determination of substance, not mere form."  *Id.* (citing *Astron Industrial Associates, Inc. v. Chrysler Motor Corp.*, 405 F.2d 958, 961 (5th Cir. 1968); *Aerojet General Corp. v. Aske*, 511 F.2d 710, 719 (5th Cir.), *cert. denied*, 423 U.S. 908 (1975)).  Allowing McCluskey to relitigate his claims against defendants in this action by purporting to sue them exclusively in their individual capacities would exalt form over substance and deprive defendants of the protection afforded by the doctrine of claim preclusion.

II.     The § 1983 Claim against Roberts

McCluskey's next two arguments relate to the dismissal of his § 1983 claims against Roberts in his individual capacity.  "To state a claim under § 1983, a plaintiff must allege two elements: (1) 'the violation of a right secured by the Constitution and laws of the United States,' and (2) 'the alleged deprivation was committed by a person acting under color of state law.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (quoting *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004)).  In addition, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).  "[P]ersonal involvement for these purposes … mean[s] direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). "Conclusory accusations regarding a defendant's personal involvement in the alleged violation, standing alone, are not sufficient, and supervisors cannot be held liable based solely on the

13

alleged misconduct of their subordinates." *Kee v. Hasty*, No. 01-CV-2123 (KMW) (DF), 2004 WL 807071, at *12 (S.D.N.Y. Apr. 14, 2004) (internal citations omitted).

In seeking reconsideration of the Court's decision to dismiss his claims against Commissioner Roberts, McCluskey argues that the Court overlooked the implications of *Briggs v. Bremby*, 792 F.3d 239 (2d Cir. 2015). *Briggs* involved a class action, brought by an applicant for food stamp benefits against the Commissioner Bremby of the Connecticut Department of Social Services in his official capacity, to enforce the statutory time limits for awarding SNAP benefits which are set forth in 7 U.S.C. § 2020(e)(3) and (9). The district court entered a preliminary injunction requiring the DSS to process food stamp applications within the statutory deadlines. *Briggs v. Bremby*, 2012 WL 6026167 at *18–*19 (D. Conn. Dec. 4, 2012). The Second Circuit affirmed, holding that the time limits for allocating food stamps provided in 7 U.S.C. § 2020(e)(3) and (9) are privately enforceable through § 1983 actions and that federal regulations did not excuse DSS from complying with the time limit provisions. *Briggs*, 792 F.3d at 245–46.

*Briggs* is utterly irrelevant to the question of whether McCluskey has alleged a cause of action against Roberts. Roberts is Commissioner of OTDA, not the Nassau County DSS. Roberts is purportedly sued in his individual capacity in this case; Bremby was sued in his official capacity as the Commissioner of the agency responsible for processing Briggs' SNAP applications. Although McCluskey contends that *Briggs* did not require personal involvement on the part of a Commissioner, Bremby's personal involvement was not at issue in *Briggs*. Moreover, nothing in *Briggs* is relevant to the case-specific question of whether McCluskey has adequately alleged the personal involvement of Roberts in this action.

14

McCluskey's claim that he was alleging a violation of the time limits set forth in 7 U.S.C. § 2020(e)(3) and (9) is also unavailing.  In arguing that the Court overlooked allegations that defendants did not timely adjudicate his eligibility for SNAP benefits, McCluskey quotes the report and recommendation in No. 17-CV-5873, which cited allegations in the complaint in that case.  McCluskey did not repeat those allegations in this case, or otherwise suggest that he was contesting the timeliness of the DSS's determination of his benefits.  Similarly, the complaint in this action does not allege facts suggesting a due process violation.  Moreover, even if the complaint could be read as alleging a timeliness or due process claim, there is nothing to suggest that Roberts, as Commissioner of OTDA, was personally involved in DSS's alleged wrongdoing.

III.   Judicial Immunity

McCluskey's final argument – which seeks reconsideration of the Court's determination that Oto enjoys absolute immunity from a suit for money damages – misapprehends the scope of judicial immunity.  McCluskey argues that the Court overlooked allegations that Oto engaged in a corrupt conspiracy with attorneys representing his adversaries.  (Motion at 4 (citing Compl. ¶¶ 36–37).)  Even if paragraphs 36 and 37 of the complaint – which contain only vague conclusory allegations – could be read as alleging Oto's involvement in a corrupt conspiracy, those allegations would be insufficient to defeat immunity.  The judicial immunity doctrine "protects judges from civil actions even when they perform judicial acts in excess of their authority, even when such acts are allegedly done maliciously or corruptly."  *Maestri v. Jutkofsky*, 860 F.2d 50, 52 (2d Cir. 1988) (quoting *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978)).  Indeed, unless the judge's actions are "not taken in the judge's judicial capacity" or are "taken in the complete absence of all jurisdiction," the judge is absolutely immune from suit, not just from ultimate assessment of damages.  *Mireles v. Waco*, 502 U.S. 9, 11 (1991).  Since McCluskey does not

suggest that Oto was not acting in her judicial capacity or that her action were taken in the complete absence of jurisdiction, Oto is immune from suit.

The two cases cited by McCluskey – *Earle v. Benoit*, 850 F.2d 836 (1st Cir. 1988), and *Nesmith v. Alford*, 318 F.2d 110 (5th Cir. 1963) – are inapposite.  Those actions alleged conspiracies to violate civil rights by police defendants.  They did not name any jurists as defendants and did not raise questions of judicial immunity.

## CONCLUSION

For the reasons set forth above, the motion to alter or amend the judgment in this case is denied.  The Clerk of Court is directed to mail a copy of this Memorandum and Order to McCluskey and to note that mailing on the docket sheet.  Although the Court notes that McCluskey paid the fee to bring this action, he has proceeded *in forma pauperis* in prior actions.  Accordingly, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
      November 3, 2020

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
Chief United States District Judge